# CHARLESTOWN.

## SOUTH BRANCH RAILWAY CO. *v.* LONG.

Submitted September 5, 1885.—Decided October 2, 1885.

1. There is a demurrer to a declaration and to each of the six counts thereof, the court sustains the demurrer as to *four* counts and overrules it as to *two* which set out a different cause of action. A subsequent order, which recites, that the demurrer had been sustained as to four of the counts in the declaration leaving and sustaining only the third and fourth counts, says as to them: "On which the plaintiff is unwilling to risk his case alone, he suffers a non-suit as to them without fine, which the defendant waives," and then proceeds: "It is therefore considered by the court, that the plaintiff be nonsuited as to said counts, and that defendant recover against the plaintiff his costs herein expended." HELD:

   I. It was not a nonsuit as to the two counts. If a nonsuit at all, it went to the whole case, as there is no such thing as a partial nonsuit.

   II. It was not a nonsuit but was a *retraxit* as to the said third and fourth counts, and a final judgment on the demurrer to the other *four* counts.

   III. It was also a judgment against the plaintiff on the said third and fourth counts, and no suit could ever be prosecuted for the same cause of action, as is set out therein or in either of them.

The opinion of the Court contains a statement of the facts of the case:

*Robert White* for plaintiff in error.

*Daniel B. Lucas* for defendant in error.

JOHNSON, PRESIDENT:

This was an action of trespass on the case in *assumpsit* brought in the circuit court of Hampshire county in 1874.

The declaration is as follows:

"HAMPSHIRE COUNTY, TO-WIT:

"IN THE CIRCUIT COURT.

"THE SOUTH BRANCH RAILWAY COMPANY, plaintiffs,  ⎫
                    *vs.*                        ⎬ *Ass'p't.*
        CONRAD LONG, Defendant.                  ⎭

"The plaintiff complains of Conrad Long, being summoned, &c., of a plea of trespass on the case in *assumpsit,* for that, whereas, heretofore, to-wit, on February 25, 1871, the Legislature of West Virginia passed an act entitled, 'An act to incorporate the South Branch Railway Company,' whereby a number of persons were appointed commissioners to open books of subscription to the capital stock of said company in shares of $100.00 each to the amount of $50,000.00, which was allowed to be increased by the sale of additional shares to the amount of $500,000.00, for the purpose of constructing, equipping and operating, by steam or otherwise, a railway from Romney, in said county, to the Baltimore and Ohio Railroad, between the South Branch and Patterson's creek bridges; and afterwards, to-wit, on June 17, 1871, at, &c., the sum of $8,000.00 (and afterward and not exceeding $50,-000.00) to the capital stock of said company having been subscribed by various persons (not less than twenty in number) under the provisions and by virtue of said act, in shares of $100.00 each, as required by law, the said company did then and there, in general meeting of stockholders assembled, organize as provided by law, and said company then and there became fully organized and incorporated under the corporate name of the South Branch Railway Company; that on, &c., at, &c., upon a book of said stock subscription, the said defendant did subscribe for five shares of said capital

stock of the par value of $500.00, together with others who subscribed various other shares, and some of them with the understanding and agreement with said defendant that he would and did subscribe for said five shares, and in consideration thereof, that said subscriptions were made under a heading in these words to-wit: 'The subscribers promise and bind themselves severally to pay unto the capital stock of the South Branch Railway Company the shares of stock affixed to their names (of $100.00 each), as shall be required by said company after its organization ;' and said defendant did then and there, duly and fully, become a subscriber to the capital stock and a stockholder in said company ; and said plaintiff avers that afterwards, to-wit, on, &c., at, &c., the plaintiff (through its individual members), on the faith of said subscription and the stock taken by said defendant and other parties as aforesaid, did, in order to give credit to said company and to raise funds to carry on the work of constructing said railway as proposed, guarantee the payment of $35,000.00 of the said subscribed stock of the road aforesaid ; and further, said plaintiff avers that heretofore, to-wit, on, &c., at &c., the plaintiff on the faith and dependence that said defendant would keep his said promise and pay in said stock as required, let the construction of said road to contract, and did cause the construction of said road to be entered upon and progressed in, whereby said plaintiff was required to expend large sums of money and to become liable to pay further sums ; and on May 28, 1873, the work on said road having commenced, the said company, by an order of its duly authorized board of directors, did require that said stockholders should pay an instalment of ten *per cent.* on each share of their stock subscription on or before June 10, 1873; also ten *per cent.* on each share, thereafter to be paid monthly on or before the 10th day of each month until the subscription be paid up, of which requirement said defendant then and there had notice ; and although defendant was, on, &c., at, &c., duly notified and required to pay in the eight several instalments which became payable June 10, 1873, and in every month since, the defendant has wholly failed to pay the same, whereby, and by force of the statute in such case made and provided, an action has accrued to plaintiff to have and de-

mand of the defendant eighty *per cent.* of his five shares of stock aforesaid, with ten *per cent. per annum* interest on each instalment from the time the same became payable as aforesaid, the aggregate amount of principal payable at the institution of this suit amounting to $400.00; and being so liable, the said defendant, afterwards, to-wit, on, &c., at, &c., in consideration thereof, did undertake and faithfully promise the plaintiff to pay it the said sum of $400.00, with interest as aforesaid, whenever thereunto afterward requested.

"Second.—Also, for that, whereas, heretofore, to-wit, on the — day of ——, 1871, at, &c., the said defendant made, signed and executed, for the use of plaintiff, a certain paper writing, without date on its face, whereby he promised and bound himself to pay into the capital stock of the South Branch Railway Company, for five shares of stock of $100.00 each, making the gross sum of $500.00, to be paid when and as the said company should require the same to be paid, after its organization, which said writing was then and there made and delivered to the commissioners for and agents of said company, for its use, and accepted by it. And the plaintiff avers that said company was organized on June 17, 1871, at, &c., whereof the defendant then and there had notice, and afterwards, on May 28, 1873, at, &c., the work on the South Branch railway having been commenced, the said company, by the order of the duly authorized board of directors, did require the defendant to pay ten *per cent.* on said $500.00 on or before June 10, 1873, also ten *per cent.* on each share of stock, thereafter to be paid monthly on or before the 10th day of each month until the whole amount of said $500.00 be paid up; and the plaintiff avers that eighty *per cent.*, amounting to $400.00 of said gross sum. has been thus required by said company to be paid prior to the institution of this suit, and the defendant on, &c., at, &c., had notice of said requirement, yet refuses to pay the same. Wherefore an action accrued to plaintiff to have and demand of the defendant the said sum of $400.00, with interest; and being so liable, said defendant, afterwards, to-wit, on, &c., at, &c., undertook and faithfully promised said plaintiff to pay it said $400.00 and interest whenever he should be thereunto afterwards requested.

" Third.—Also, for this, that the said defendant heretofore, to-wit, on, &c., at, &c., in consideration that the plaintiff then and there agreed to sell him five shares of its capital stock at its par value of $500.00, he, said defendant, then and there agreed to purchase the same at the price of $100.00 a share, and pay for the same as and when he should be required by said company; and afterwards, to-wit, on, &c., at, &c., on the faith of the sale of said stock to defendant, and that he would keep and perform his said agreement, the said plaintiff (through its individual members,) in order to raise the credit of said company, and to raise funds to carry on the work of constructing said company's proposed railway, did guarantee that said five shares of stock, agreed to be taken as aforesaid, would be so taken and paid for by defendant according to the contract; and on, &c., at, &c., the plaintiff, on the faith that said five shares of stock would be so taken and paid for by defendant, let the construction of its railway to contract, and laid out and expended large sums of money in such construction, and became liable to pay other sums therefor; and said plaintiff avers that it has always been ready and willing to carry out said contract on its part, and has offered to sell and transfer to said defendant said five shares of its stock for said price as agreed on; and on May 28, 1873, at, &c., said company (by an order of its authorized board of directors) did require said defendant to pay ten *per cent.* on his said stock agreed to be taken as aforesaid, on or before June 10, 1873, and also 10 *per cent.* per month thereon in each subsequent month till the same should be paid for in full, whereof defendant then and there had notice, and the payment of said monthly instalments, was, on and at, &c., duly demanded of defendant, yet defendant refused to pay the same, or any part thereof, and refused to comply with his said agreement, but has openly repudiated the same, whereby said defendant is greatly damaged, to-wit, in the sum of $600.00.

" Fourth.—Also, for this, to-wit, that the defendant, heretofore, to-wit, on, &c., at, &c., was indebted to the plaintiff in the sum of $500.00 for five shares of the capital stock of said company before that time bargained and sold by said plaintiff to him, at his special instance and request, and being so indebted, afterwards, to-wit, on, &c., at, &c., he, said defend-

ant, undertook and promised said plaintiff to pay it said last mentioned sum of money whenever afterwards requested.

"Fifth.—Also, for this, that the defendant, heretofore, to-wit, on the — day of ——, 1871, at, &c., subscribed for and became the owner of five other shares, of the par value of $100 each, of the capital stock of the South Branch Railway Company, and thereby and then and there became liable to pay, and promised to pay, to said plaintiff the amount due on said five shares, to-wit, $500.00, as and when required by said Company after its organization; and said plaintiff avers that said Company was fully organized under its charter on the 17th day of June, 1871 at, &c., of which the defendant, then and there had notice; and afterwards, to-wit, on the 28th day of May, 1873, at, &c., said company having commenced work on the construction of its road (by the order of its duly authorized board of directors), required that its stock-holders should pay in on each share of their stock in said company ten per cent. on or before June 10, 1873; also ten per cent. on each share, thereafter to be paid monthly on or before the 10th day of each month until the subscriptions be paid up, and on, &c., at, &c., said defendant had notice of said requirement, and that the eight instalments which became payable under such requirement prior to the institution of this suit, amounted to eighty per cent—that is to say, $400 on his last named stock subscription, and had been required to be paid in by said company and board, yet said defendant failed to pay the same, or any part thereof, so that thereby, and by force of the statute, an action had accrued to plaintiff to have and demand of defendant said last mentioned $400.00, with ten per cent. interest on each of said instalments from the time it became payable as aforesaid; and being so liable, afterwards, to-wit on, &c., at, &c., said defendant, in consideration thereof, undertook and faithfully promised said plaintiff to pay it said last mentioned sum of $400.00 and interest whenever he should be thereunto afterwards requested.

Sixth.—And said plaintiff further says that heretofore, to-wit, on the — day of January, 1874, at, &c., the said defendant was further indebted to said plaintiff in the sum of $500.00 on account of subscription to the capital stock of

said company; and being so indebted, on, &c., at, &c., said defendant undertook and promised said plaintiff to pay it the said sum whenever thereunto afterwards requested.

"Nevertheless, the said defendant, not regarding his said several liabilities, agreements, promises and undertakings in the several counts mentioned, has failed to pay plaintiff said several sums of money, or any part thereof, or any of them or to perform and keep his said liabilities or agreements, or any of them, though often requested so to do, but the same to pay and perform and keep, said defendant hath hitherto refused, and still doth refuse, to the damage of the plaintiff $600.00 ; and, therefore, he sues, &c."

The defendant demurred to the declaration and each count thereof.

On May 5, 1876, the court entered an order removing the case to the circuit court of Lewis county, the judge of the circuit court of Hampshire being so situated, that it seemed to him improper to try the case. While the case was in the circuit court of Lewis county the following judgment was entered :

"This case having been on a former day of this term, submitted upon the demurrer to the declaration and to each count thereof and joinders therein, and the court having read the written argument of counsel is of opinion and doth consider for reasons stated in the written opinion of the court filed, that the demurrer to the whole declaration be overruled, that the demurrer to the first, second, fifth and sixth counts of the plaintiff's declaration be sustained, and to the third and fourth counts overruled. Leave will be given the plaintiff to amend its declaration in matter of substance if asked for, and if not leave will be given to the defendant for judgments to said first, second, fifth and sixth counts; leave to be given the defendant to plead third and fourth counts or if declined, with leave to the plaintiff to ask judgment thereon, and by consent of parties this cause is transferred to the circuit court of Hampshire county for further proceedings to be had therein." On April 16, 1879, the following order was entered in the case: "The demurrer of the defendant, heretofore filed and decided, to the declaration, only leaving and sustaining the third and fourth counts, on which the plaintiff is unwilling to risk his

case alone, he suffers a nonsuit as to those without fine, which fine the defendant waives, it is therefore considered by the court that the plaintiff be nonsuited as to said counts, and that defendant recover against said company his costs herein expended."

To the final judgment and to the judgment sustaining the demurrer to the first, second, fifth and sixth counts of the declaration the plaintiff obtained a writ of error.

The plaintiff did not amend its declaration according to the leave given. Finding that it could not make a different case from that stated in the counts, the demurrer to which had been sustained, on April 16, 1879, being unwilling to risk its case on the third and fourth counts alone in the language of the order " it suffered a nonsuit as to them without fine, which the defendant waived." Then follows the final order of the court: "It is therefore considered by the court, that the plaintiff be nonsuited as to said counts and that the defendant recover against said company his costs herein expended."

It was unnecessary for the final order to repeat the judgment of the court on the demurrer to the other four counts; that was made effectual by the final judgment giving costs against plaintiff. Now it is here insisted for defendant in error, that the said final judgment is but a nonsuit, and that as the mere costs in the suit will not give this court jurisdiction, the plaintiff has no right here to maintain this writ of error, as there is no judgment against him to his injury, he not being precluded from instituting another suit for the same cause of action. If it is a nonsuit in fact, as it is in terms, as to the third and fourth counts, it is true as insisted by counsel for defendant in error, that it is a nonsuit as to the whole case, as there is no such thing as a partial nonsuit; if a nonsuit is suffered, then, as the words import, there is no longer a suit pending; there is *no suit*. (*Chandler* v. *Parker*, 3 Esp. 76; *Pinner* v. *Edwards*, 6 Rand. 674; 7 Rob. Pr. 181 –182.) This is not true as to a *retraxit*, which may be entered as to one or more counts in the declaration. It is said of a *retraxit* in *Pinner* v. *Edwards*, 6 Rand. 675 that in that case the plaintiff abandons his case, but "he goes further and admits that he has no cause of action; he entitles the de-

fendant to a judgment as beneficial to him, as if rendered on a general verdict in his favor.    *    *    A nonsuit is not a final disposition of the cause, the plaintiff may commence it anew.    A *retraxit* is a final disposition of it, and the plaintiff can not again commence his action."

In 7 Rob. Pr. 181–2 it is said: "In 38 Eliz. in an action of trover for goods and household stuff defendant pleaded as to one parcel, that they were fixed to his freehold in S.; as to another parcel, that plaintiff gave them to him at D., and as to the other part, not guilty.    The plaintiff for the first part, entered *non vult ulterius prosequi*, and took issue upon the two others.    After verdict for the plaintiff it was assigned as error, that what was entered was a nonsuit, and a nonsuit in part is nonsuit in all.    But Anderson said: "It is a question if this be a nonsuit.    The entry is *querens venit et gratis concessit*, that as to the goods mentioned in the first plea *non vult ulterius prosequi ; ideo consideratum est quod nihil de iisdem versus* the defendant *fiat, et ille* and *pleg. in meseric.* and the defendant *eat inde sine die.*    Periam said:    "A nonsuit is when the plaintiff is demanded and doth not appear; but when he comes into court and saith *quod non vult ulterius prosequi* the same is a *retraxit*."    Nelson prothonotory said: "Nonsuit is upon default, but here the plaintiff appears and this is the usual form of a *retraxit*."

Here the order shows, that the plaintiff was in court and stating he was unwilling to risk his case on the third and fourth counts alone, and that he suffers a nonsuit as to these two counts.    Suppose the order had been, "and the plaintiff being solemnly called came not," therefore he here enters his *retraxit*, &c., could that be called a *retraxit*, because that word was used in the order?    It will not be pretended that it would be a *retraxit*, because that can not be entered in the absence of the defendant, any more than a nonsuit can in his presence.    It is manifest that the plaintiff did not intend to be nonsuited as to his whole case.    What he intended, and what it was appropriate to do, was to declare, that he would not prosecute his suit on the third and fourth counts and let judgment be given against him on those two counts and on the demurrer formerly granted, so that he might at once apply for a writ of error to the judgment against him on

the four counts, as to which the demurrer had been sustained. Although the order said, he suffered a nonsuit as to these two counts, yet what it amounts to is, that he entered a *retraxit* as to those two counts.  It would be extremely technical to hold, that because it was called a nonsuit, it was in fact so, when no nonsuit can be entered as to two counts in a declaration, and a *retraxit* might be, which was manifestly intended to be done ; and to hold what was done as a nonsuit as to the two counts would be to hold that it was a nonsuit as to the whole case, which was clearly not intended.  It will be regarded as a *retraxit* as to the third and fourth counts and as a judgment thereon as well as judgment on the demurrer against the plaintiff as to the first, second, fifth and sixth counts in the declaration.  The judgment is a finality as to these two counts in the declaration.

Did the court err in sustaining the demurrer to the said four counts in the declaration ?  The only objection I can discover, that might be made to said counts and each of them is, that neither of them avers the payment on the shares of stock at the time of the subscription, which the statute requires.  After fully considering this question this Court held in *Railroad* v. *Applegate,* 21 W. Va. 172, that a subscriber to the stock of a corporation can not escape his liability to pay his subscriptions, on the ground that he did not pay the sum required to be paid by the statute, at the time he subscribed. We think the said four counts are good, and that the court erred in sustaining the demurrer thereto.

So much of said order of April 16, 1879, as enters the *retraxit* of the plaintff on the third and fourth counts and gives judgment thereon for defendant is affirmed; and so much of said order as gives judgment on the demurrers to the first, second, fifth and sixth counts, and also the order of October 19, 1876, sustaining the demurrer to said counts, is reversed with costs to the plaintiff in error; and this case is remanded to the circuit court of Hampshire county with leave to defendant to plead and for trial to be had on the said four counts of said declaration.

AFFIRMED IN PART.   REVERSED IN PART.   REMANDED.